**ANDERSEN CONSULTING LLP, Plaintiff,**

v.

**UOP and Bickel & Brewer, Defendants.**

**No. 97 C 5501.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 23, 1998.

Harley Hutchins, Alan N. Salpeter, Gary A. Isaac, Daniel Leslie Ring, Mayer, Brown & Platt, Chicago, IL, for Plaintiff.

Anton Ronald Valukas, Robert R. Stauffer, Thomas James McCarthy, Edward Francis Malone, Jenner & Block, Chicago, IL, Robert Patrick Cummins, John A. Sopuch, James Jeffrey Nouhan, Bart Fitzpatrick Higgins, Bickel & Brewer, Chicago, IL, for Defendants.

**1042**

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Andersen Consulting LLP ("Andersen"), brought an eight count complaint against the defendants, UOP and its counsel, the law firm of Bickel & Brewer. In Count I, Andersen alleges that the defendants knowingly divulged, or caused to be divulged, the contents of Andersen's e-mail messages in violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2701 *et seq.* In the remaining seven counts, Andersen raises related state law claims against the defendants. The defendants move to dismiss all counts of the complaint. For the reasons set forth below, the defendants' motion to dismiss is granted.

### Background

UOP hired Andersen to perform a systems integration project in 1992. During the project, Andersen employees had access to and used UOP's internal e-mail system to communicate with each other, with UOP, and with third parties.

Dissatisfied with Andersen's performance, UOP terminated the project in December 1993. Subsequently UOP hired Bickel and Brewer and brought suit in Connecticut state court charging Andersen with breach of contract, negligence, and fraud. Andersen countersued in two different suits for defamation.

While these three cases were pending, UOP and Bickel and Brewer divulged the contents of Andersen's e-mail messages on UOP's e-mail system to the *Wall Street Journal.* The *Journal* published an article on June 19, 1997 titled "E–Mail Trail Could Haunt Consultant in Court." The article excerpted some of Andersen's e-mail messages made during the course of its assignment at UOP. This disclosure of the e-mail messages and their subsequent publication is the basis of this suit.

### ECPA Claim

■ 18 U.S.C. § 2702(a)(1) states that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in elec-

tronic storage by that service." Andersen claims that the defendants violated this section by knowingly divulging the contents of its e-mail message to the Wall Street Journal.

To be liable for the disclosure of Andersen's e-mail messages, UOP must fall under the purview of the Act: UOP must provide "electronic communication service to the public." 18 U.S.C. § 2702(a)(1). The statute defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). The statute does not define "public." [1] The word "public," however, is unambiguous. Public means the "aggregate of the citizens" or "everybody" or "the people at large" or "the community at large." *Black's Law Dictionary* 1227 (6th ed.1990). Thus, the statute covers any entity that provides electronic communication service (e.g., e-mail) to the community at large.

Andersen attempts to render the phrase "to the public" superfluous by arguing that the statutory language indicates that the term "public" means something other than the community at large. It claims that if Congress wanted public to mean the community at large, it would have used the term "general public." However, the fact that Congress used both "public" and "general public" in the same statute does not lead to the conclusion that Congress intended public to have any other meaning than its commonly understood meaning. *Compare* 18 U.S.C. § 2511(2)(g) (using the term "general public") *with id.* §§ 2511(2)(a)(i), (3)(a), (3)(b), (4)(c)(ii) (using the term "public").

■ Andersen argues that the legislative history indicates that a provider of electronic communication services is subject to Section 2702 even if that provider maintains the system primarily for its own use and does not provide services to the general public. This legislative history argument is misguided. "A court's starting point to determine the intent of Congress is the language of the statute itself." *United States v. Hayward*, 6 F.3d 1241, 1245 (7th Cir.1993). If the lan-

---

**1.** Further, there is no case law interpreting the word "public" as used in the ECPA.

guage is "clear and unambiguous," the court must give effect to the plain meaning of the statute. *Id.* Since the meaning of "public" is clear, there is no need to resort to legislative history.

Even if the language was somehow ambiguous, the legislative history does not support Andersen's interpretation. The legislative history indicates that there is a distinction between public and proprietary. In describing "electronic mail," the legislative history stated that "[e]lectronic mail systems may be available for public use or may be proprietary, such as systems operated by private companies for internal correspondence." S.Rep. No. 99–541, at 8 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3562. Thus, Andersen must show that UOP's electronic mail system was available for public use.

In its complaint, Andersen alleges that UOP "is a general partnership which licenses process technologies and supplies catalysts, specialty chemicals, and other products to the petroleum refining, petrochemical, and gas processing industries." Complaint ¶ 3. UOP is not in the business of providing electronic communication services. It does, however, have an e-mail system for internal communication as e-mail is a necessary tool for almost any business today. *See State Wide Photocopy v. Tokai Fin. Servs., Inc.,* 909 F.Supp. 137, 145 (S.D.N.Y.1995) (finding that defendant was in the business of financing and that the mere use of fax machines and computers, as necessary tools of business, did not make it an electronic communication service provider).

UOP hired Andersen to provide services in connection with the integration of certain computer systems. As part of the project, "UOP provided an electronic communication service for Andersen to use. That electronic communication service could be used, and was used by Andersen and UOP personnel, to electronically communicate with (*i.e.,* send e-mail messages to, and receive e-mail messages from) other Andersen personnel, UOP personnel, third-party vendors and other third-parties both in and outside of Illinois." Complaint ¶ 10.

Based on these allegations, Andersen claims that UOP provides an electronic communication service to the public. However, giving Andersen access to its e-mail system is not equivalent to providing e-mail to the public. Andersen was hired by UOP to do a project and as such, was given access to UOP's e-mail system similar to UOP employees. Andersen was not any member of the community at large, but a hired contractor. Further, the fact that Andersen could communicate to third-parties over the internet and that third-parties could communicate with it did not mean that UOP provided an electronic communication service to the public. UOP's internal e-mail system is separate from the internet. UOP must purchase internet access from an electronic communication service provider like any other consumer; it does not independently provide internet services.

*State Law Claims*

Once Andersen's ECPA claim is dismissed from the case, this court no longer has subject matter jurisdiction over the remaining state law claims. "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251 (7th Cir.1994). Thus, the remaining state law claims in Counts II through VIII are dismissed.

*Conclusion*

Defendants' motion to dismiss all counts of Andersen's complaint is granted.